IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY MANIGAULT,<br><br>　　　　　　　Petitioner,<br><br>vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1]<br><br>　　　　　　　Respondent. | No. 9:19-cv-00907-JKS<br><br>MEMORANDUM DECISION |

Henry Manigault, a former New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Manigault was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Bare Hill Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 15-A-0399), indicates that Manigault was conditionally released to parole supervision on February 26, 2020. Manigault has filed a change of address with this Court. Respondent has answered the Petition, and Manigault has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

Manigault was charged in an eight-count indictment following two alleged altercations with his ex-girlfriend. Specifically, the indictment charged Manigault with first-degree criminal

---

[1] Because Manigault has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted for Bruce Yelich, Superintendent, Bare Hill Correctional Facility. FED. R. CIV. P. 25(c).

sexual act (Count 1); third-degree criminal sexual act (Count 2); three counts of second-degree strangulation (Counts 3-5); third-degree assault (Count 6); second-degree unlawful imprisonment (Count 7); and third-degree rape (Count 8).

At trial, the victim testified that, on the evening of October 16, 2013, Manigault became angry that the victim had spent the day with a male friend and slapped her in the face several times before anally penetrating her with his penis, as she cried, told him "no," and scratched his back. The victim additionally testified that she later had vaginal sex with him and did not tell him no because she feared further physical harm. She also testified that she did not tell anyone about the experience because she was embarrassed and scared of Manigault, but that she broke up with him shortly thereafter.

The victim further testified that roughly two weeks after the break-up, on November 6, 2013, Manigault approached her at work, and the two agreed to meet after work. Following an amicable conversation, the vicim agreed to Manigault's request that they go to her apartment so that Manigault could retrieve his belongings. The victim testified that, while he was packing, Manigault questioned whether she was seeing another man, and then slapped her in the face before hitting her with a clothes hanger and grabbing her by the throat and lifting her in the air. According to the victim, Manigault also hit her in the face, dragged her into a guest room, choked her a second time, and punched her in the face. After Manigault had calmed down, the victim testified that she went into her bedroom to sleep, and Manigault followed her, removed her clothes, and inserted his fingers into her vagina. The victim alleged that Manigault asked her during that attack whether she thought he had ever killed someone, and he nodded when she replied that it would not surprise her if he had. The victim testified that, because she was afraid

of what Manigault might do to her, she did not resist when he put his penis inside her vagina. Afterwards, she went to sleep.

The victim testified that she drove with Manigault to work the next morning, but upon seeing her battered face, she told her mother what happened, and her mother accompanied her to the New York State Police Department. An investigator briefly interviewed her, had photos taken, and had a trooper take her to the hospital, where she was examined by a Sexual Assault Nurse Examiner ("SANE"). The investigator and the emergency room nurse both testified for the prosecution.

Manigault testified in his own defense. He denied having any sexual contact with the victim on October 16 or 17, 2013, and said nothing improper happened that night. Manigault testified that he and the victim were still dating and living together as of the November 6, 2013, incident. Manigault claimed that the victim informed him that evening that she had slept with another man the weekend before. Manigault admitted that he slapped her and put his hand on her neck, but testified that he had done so to "restrain[] her" after the victim began fighting with him. Manigault further testified that their argument eventually ended, and the two had consensual sex.

At the conclusion of trial, the jury acquitted Manigault of the two charges relating to the October 16, 2013, incident (Counts 1 and 2) but found him guilty of all charges relating to the November 6, 2013, incident (3 counts of second-degree strangulation, third-degree assault, second-degree unlawful imprisonment, and third-degree rape). The trial court subsequently sentenced Manigault to an aggregate 4-year imprisonment term, to be followed by 10 years of post-release supervision.

Through counsel, Manigault appealed his conviction, arguing that: 1) the evidence was legally insufficient to support his rape and strangulation convictions, and those convictions were against the weight of the evidence; 2) the three strangulation charge (Counts 3-5) were multiplicitous; and 3) his post-release term related to the strangulation charges should be reduced to the maximum term of 3 years. Respondent agreed that Manigault's sentence must be modified in part to reflect the statutory maximum term of post-release supervision as to the strangulation charges, but opposed the appeal in all other respects. The Appellate Division of the New York Supreme Court unanimously modified the judgment to correct the illegal post-release supervision term and reversed as duplicitous one conviction of strangulation (Count 5), but otherwise affirmed the convictions against Manigault in a reasoned opinion issued on May 4, 2017. *People v. Manigault*, 54 N.Y.S.3d 193, 196-197 (N.Y. App. Div. 2017). Again proceeding through counsel, Manigault petitioned for leave to appeal in the New York Court of Appeals, raising his unsuccessful insufficiency claims. The Court of Appeals denied leave without comment on August 15, 2017. *People v. Manigault*, 86 N.E.3d 680, 680 (N.Y. 2017).

Manigault then filed a *pro se* motion for writ of error *coram nobis* dated March 21, 2018. In that motion, Manigault claimed that appellate counsel was ineffective in the manner she presented Manigault's insufficiency claims. The Appellate Division summarily denied the motion without opinion on May 3, 2018, and the Court of Appeals denied Manigault's petition for leave to appeal on June 29, 2018.

Manigault also moved to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10, arguing that: 1) the indictment against him was defective due to prosecutorial misconduct during the grand jury proceedings; 2) the prosecutor

withheld exculpatory evidence; and 3) he received the ineffective assistance of trial counsel. The county court held an evidentiary hearing on the motion which was limited to the issue of whether the victim had given law enforcement a second written statement that was not disclosed to Manigault. Manigault appeared at the hearing with counsel and testified that he was shown the victim's second statement, in which the victim allegedly told law enforcement that the first time Manigault hit her was during the November 6, 2013, incident and that she had consented to sex that day, when he was interviewed about the victim's allegations on November 8, 2013. Three law enforcement officials also testified. Following the hearing, the court issued a written decision finding that the victim had not made a second statement. Manigault applied for leave to appeal the denial, which was denied on May 16, 2019.

Manigault then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on July 28, 2019. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Manigault argues that: 1) the evidence was legally insufficient to support his conviction for third-degree rape; 2) the evidence was legally insufficient to support his conviction for second-degree strangulation; 3) appellate counsel rendered ineffective assistance; 4) the indictment against him was defective because the prosecutor committed misconduct during the grand jury proceedings; 5) the prosecutor committed misconduct by withholding exculpatory evidence; and 6) trial counsel rendered ineffective assistance.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and

application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.    Mootness

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

As previously mentioned, the record before this Court indicates that Manigault has been conditionally released from prison to parole supervision. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing

injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Moreover, a petitioner serving a term of supervised release is considered "in custody" for purposes of 28 U.S.C. § 2254. *Harvey v. People of the City of New York*, 435 F. Supp. 2d 175, 177 (E.D.N.Y. 2006) (citing *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)). Accordingly, because Manigault is still in the custody of the New York DOCCS and, in any event, still subject to collateral consequences of his conviction, Manigault's Petition has not been rendered moot by his release from prison.

B.    Merits

    1.    *Sufficiency of the Evidence* (Grounds 1, 2)

Manigault first argues that the prosecution presented legally insufficient evidence to sustain his convictions for third-degree rape and second-degree strangulation. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim that the evidence was legally insufficient as to his third-degree rape conviction, Manigault avers that "the People failed to prove that the victim clearly expressed her lack of consent to the sexual act." The Appellate Division considered and rejected this claim on direct appeal as follows:

> [Manigault's] contention that the victim did not clearly express an unwillingness to engage in sexual intercourse with him is without merit. In regard to consent, "the proper inquiry for the factfinder is not whether a defendant actually perceives a lack of consent, but whether the victim, by words or actions, clearly expresses an unwillingness to engage in the sexual act in such a way that a neutral observer would have understood that the victim was not consenting." Whether a person's words or acts express a lack of consent must be considered under "all the circumstances." Here, [Manigault] had, over the course of the day, physically abused the victim, strangled her to near unconsciousness, confined her and made death threats towards her. During the same period, the victim verbally communicated to him that she did not want to be in a relationship with him anymore and attempted to flee his presence, an escape that was thwarted only due to [Manigault] depriving her of car keys. Considering these facts and given the victim's utter lack of participation in the intercourse that [Manigault] thereafter initiated, a neutral observer would have understood that the victim had clearly indicated her lack of consent. Accordingly, there is legally sufficient evidence to support the conclusion that the victim did not consent to the intercourse, and, deferring to the jury's credibility determinations, the verdict as to rape in the third degree is not against the weight of the evidence.

*Manigault*, 54 N.Y.S.3d at 196 (citations omitted).

Manigault similarly contends as to his second-degree strangulation conviction that "the People failed to prove that the victim suffered stupor, loss of consciousness or physical injury of impairment." The Appellate Division likewise considered and rejected that claim as follows:

> [T]he victim's testimony established that she was gasping for air, suffered from narrowed vision and felt dizzy as a result of defendant repeatedly choking her. This evidence was legally sufficient to establish that [Manigault] caused the requisite "stupor" in strangling the victim, and, deferring to the jury's credibility determinations, the

>conclusion that Manigault inflicted such a stupor is not against the weight of the evidence.

*Manigault*, 54 N.Y.S.3d at 195-96 (citations omitted).

Manigault challenges the conclusions of the New York appellate court by again pointing to his trial testimony that laid out a different version of events and arguing that there was insufficient corroborating evidence to support the victim's testimony. But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses); *Bellezza v. Fischer*, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (holding that, on collateral review, a federal habeas court "must presume that the jury resolved any questions of credibility in favor of the prosecution") (internal quotation marks and citation omitted). Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). Indeed, "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979).

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Manigault bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. For the reasons discussed in the Appellate Division's thoughtful analysis, the record does not

compel the conclusion that no rational trier of fact could have found proof that Manigault committed third-degree rape and second-degree strangulation, especially considering the double deference owed under *Jackson* and the AEDPA. Manigault is therefore not entitled to relief.

      2.      *Ineffective Assistance of Appellate Counsel* (Ground 3)

In a related claim, Manigault faults appellate counsel for the way she raised on direct appeal the insufficiency arguments in Grounds 1 and 2. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Manigault must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New

York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Manigault's ineffective assistance claim must fail, however, even under the more favorable New York standard. Manigault fails to show that appellate counsel's presentation of the legal insufficiency arguments were in any way deficient. He appears to argue, as he did on direct appeal, that counsel did not assert a federal insufficiency claim under *Jackson*. The record, however, belies this claim. Although counsel cited only New York cases in support of the argument, those cases in turn relied on the federal authority of *Jackson*, and the Appellate Division clearly recognized that Manigault's claim raised the federal implications of *Jackson* and nonetheless denied it on the merits. Moreover, as discussed *supra*, Manigault's *Jackson* claim is without merit.

Manigault also faults counsel for "fail[ing] to use the proper facts." But he provides nothing more than his unsupported and conclusory statement to that effect. This lack of evidentiary support is fatal to his claim. *Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per curiam*) (holding that state habeas petitioner carries the burden of proof); *see, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong" (citation omitted)). "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief." *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013). As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips*, No.

1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review). Manigault fails to show that appellate counsel was deficient in her legal insufficiency arguments, or that he was prejudiced by the manner those arguments were presented. Consequently, Manigault is not entitled to relief on his ineffective assistance claim.

       3.     *Defective Grand Jury* (Ground 4)

Manigault next contends that the indictment against him was defective because it was obtained through the prosecution's "use[] [of] a false incident to thwart the ability of the grand jury [to] uncover the facts accurately." Manigault appears to argue, as he did by way of error *coram nobis* motion, that the prosecution presented to the grand jury the victim's false testimony that Manigault assaulted her on October 16-17, 2013. Manigault contends that the false testimony tainted the entirety of the grand jury proceedings such that the indictment against him was defective as to all counts.

With respect to the counts relating to the October 16, 2013, allegations, Manigault was acquitted of those charges, and therefore cannot obtain habeas relief as to those charges in any event.[2] Nor can he show that he is entitled to relief as to the remaining charges because his subsequent conviction on those charges forecloses any potential relief with respect to such claim. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to

---

[2] To the extent Manigault could assert a wrongful prosecution claim as to the October 16, 2013, allegations, such claim would need to be brought in a civil suit outside of the post-conviction and habeas actions he has pursued. The Court expresses no opinion as to the availability of such relief or the likelihood of success of such claim.

indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).

In any event, even though the jury acquitted him of the charges relating to the October 16-17, 2013, events by presumably finding that the prosecution did not establish that sexual assault beyond a reasonable doubt, Manigault fails to show that the victim's testimony to the contrary was definitively false. The prosecution's failure to prove guilt beyond a reasonable doubt did not imply that the prosecuting witness testified falsely, let alone that she committed perjury, and more importantly, does not show that the prosecutor knowingly presented false testimony. Manigault is therefore not entitled to relief on any argument that the grand jury proceedings were defective.

    4.    *Prosecutorial Misconduct/Ineffective Assistance of Trial Counsel* (Ground 5, 6)

Finally, Manigault claims that the prosecution committed misconduct by failing to disclose exculpatory evidence, and trial counsel was ineffective in failing to obtain that material.

To establish a violation under *Brady v. Maryland*, 373 U.S. 8 (1963),[3] a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Here, however, Manigault fails to show that the challenged evidence even existed.  As noted above, the county court held an evidentiary hearing on Manigault's claim, during which he was represented by counsel and able to testify in support of his claim.  Three law enforcement officers also testified.  At the conclusion of the hearing, the county court found credible the officers' testimony contradicting Manigault's claim.  This Court must defer to the credibility determinations of the county court, who, being able to observe the witnesses' demeanor and testimony first-hand, was in the best position to make such determinations.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).  Manigault did not present to the state courts, and does not present here, anything other than his own statement that he was shown evidence supporting that the victim admitted that she was not assaulted on October 16-17, 2013.  Manigault thus fails to show that the People violated *Brady*, and he is not entitled to relief.

## V. CONCLUSION

Manigault is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

---

[3] The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.  *Brady*, 373 U.S. at 8.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 10, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge